IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARQUILS U. HUNTER,

        Plaintiff,

v.                                                                      CIV 10-0906 KBM/DJS

KLA TENCORE CORPORATION,
JOHN SKOUSEN, and TERRY HENDRIX,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

      THIS MATTER comes before the Court on cross-motions for summary judgment.  *See Doc. 46 & Doc. 51.*  Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment.  Having carefully reviewed the parties' submissions and the relevant authorities, I find that genuine disputes exist as to material facts regarding Plaintiff's allegations of disparate treatment based on race and will therefore deny both motions as to those claims.  With regard to Plaintiff's claims of retaliation in violation of Title VII and the New Mexico Human Rights Act, however, I find that Plaintiff has failed to demonstrate that he exhausted his administrative remedies.  Therefore, because the Court lacks subject matter jurisdiction over those claims in Counts II and V, they will be dismissed.

                                                **I.    Factual Background**

      Defendant KLA Tencor Corporation ("KLA Tencor") let go its employee, Plaintiff Marquils Hunter, in November 2008 as part of a nation-wide reduction in force ("RIF")

necessitated by the poor economy. Defendants contend that Plaintiff was selected for layoff because his skills were less proficient than those of his co-workers. Plaintiff, who is African-American, believes his termination was the result of illegal race discrimination and retaliation. Plaintiff seeks compensation, including lost wages, emotional distress damages, and punitive damages for alleged violations of Title VII, 42 U.S.C. § 1981, and the New Mexico Human Rights Act ("NMHRA"). *See id.* In short, Plaintiff asserts that Defendants treated him differently than other similarly-situated employees who were not African-American and retaliated against him for complaining about allegedly racist comments made by his boss, Defendant John Skousen.

## II.   Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. Fed. R. Civ. P. 56(c)(1)(A) (emphasis added). Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)). Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2).

The Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the Court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment. Fed. R. Civ. P. 56(e). The Court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f).

### III. Analysis

"A plaintiff may prove a violation of Title VII or 42 U.S.C. § 1981 – the standards are the same – either by direct evidence of discrimination or by adhering to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Crowe v. ADT Sec. Svcs., Inc.*, ___ F.3d ___, 2011 WL 1532536 at *3 (10th Cir. April 25, 2011) (citations omitted); *See also Carney v. City and County of Denver*, 534 F.3d 1269, 1273 (10th Cir. 2008) ("In racial discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981, 1983 or Title VII." (citation omitted)). "If, however, the plaintiff does not present direct evidence of discrimination and does not offer enough evidence for the jury to find

3

that all elements of the prima facie case have been established, then the defendant is entitled to judgment as a matter of law." *Anderson v. Academy School. Dist. 20*, 122 F. App'x 912, 915 (10th Cir. 2004) (unpublished).

Direct evidence of discrimination is that which would support an inference that race discrimination played a motivating factor in the employer's alleged adverse actions. *Cf. Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 983 (10th Cir. 2008) (for example, where tape-recorded conversations "would support an inference that religious discrimination played a motivating factor in the employer's decision not to hire the applicant."). In the summary judgment context, "we ask only whether the plaintiff's direct evidence is sufficient to create a genuine issue of material fact to defeat summary judgment." *Id.*

The *McDonnell Douglas* burden-shifting framework applies in the absence of direct evidence of discrimination when the only evidence of discrimination is circumstantial. *See Crowe*, 1011 WL 1532536 at **3-5. It initially requires a plaintiff to prove a prima facie case by showing: (1) he is a member of a protected class, (2) an adverse employment action, and (3) disparate treatment among similarly situated employees. *See id.*

Regardless of whether the case involves direct or circumstantial evidence, the Plaintiff must make a showing of an "adverse employment action." "The Tenth Circuit has liberally define[d] the phrase 'adverse employment action,' and takes a case-by-case approach, examining the unique factors relevant to the situation at hand." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (internal quotations omitted). Generally, "adverse employment actions" includes only those "acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

4

decision causing a significant change in benefits." *See id.* (quoting *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006)). A mere inconvenience does not constitute adverse employment action. *See id.* (citing *Sanchez v. Denver Pub. Schools.*, 164 F.3d 527, 532 (10th Cir. 1998)). "A plaintiff must show that the alleged adverse action caused more than '*de minimis* harm' to or a '*de minimis* impact' upon an employee's job opportunities or status." *Id.* (quoting *Hillig v. Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004)).

Defendants' termination of Plaintiff's employment undoubtedly qualifies as adverse employment action. *See, e.g., EEOC v. C.R. England, Inc.*, 2011 WL 1651372 at *7. Plaintiff also contends that Defendants took adverse employment actions in failing to provide written feedback regarding Plaintiff's allegedly deficient skills, *see Doc. 49* at 9 & 15, and in failing to provide training, especially training on the SP2 and Phoenix Handler tools. *See id.* at 8 & 17.

### A. Defendants' Failure to Provide Written Feedback

Plaintiff argues that by not issuing a personal improvement plan (PIP), Defendants failed to give him adequate opportunity to correct his alleged deficiencies prior to termination. *See Doc. 49* at 1 ("The decision by Defendants not to provide Mr. Hunter feedback about his job performance on the basis of his race sealed his fate as one of the lower rated customer service engineers . . . and ultimately le[]d to him being selected for termination during a reduction in force."). Defendants actually considered placing Plaintiff on a PIP in accordance with their policies and procedures, but decided against such an action. Defendants dispute that race played a factor in the decision not to issue a personal improvement plan. *See Doc. 53* at 5, ¶ 15. However, Plaintiff's direct supervisor Skousen testified that as to that decision, "one of the reasons was that–that he was black and he might sue us, and did we really want to put him on a

5

personal improvement plan." Doc. 48 at Ex. 3, 107:19-108:9.  Clearly there is a disputed issue of fact as to Defendants' motivation for why that decision was made.

Defendants contend that summary judgment in their favor is nonetheless appropriate because the failure to initiate an improvement plan with an employee cannot constitute an "adverse action" as a matter of law.  *See Doc. 51* at 19 (citing *Cullom v. Brown*, 209 F.3d 1035 (7th Cir. 2000)); *Doc. 47* at 14.  Indeed, as noted by the Seventh Circuit in *Cullom v. Brown*, "[t]he adversity of an employment action is judged objectively, and no reasonable person would call 'adverse' an employer's failure to demote him to a remedial program and place him on probation.  On the contrary, most employees would claim that being *placed* in such a remedial program is an adverse action." 209 F.3d 1035, 1041 (7th Cir. 2000) (citations omitted).  Even so, the Tenth Circuit has expressly held that when such a plan is imposed, rather than withheld as in the present case, "a PIP, standing alone, is *not* an adverse employment action."  *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006) (emphasis added).

To the best of my knowledge, the Tenth Circuit has not addressed whether an employer's pre-termination failure to provide negative feedback can constitute an adverse employment action.  The Fifth Circuit has found that it can be an adverse action for an employer to purposefully withhold criticism or counseling from an underperforming employee prior to that employee's termination.  *See Vaughn v. Edel*, 918 F.2d 517, 523 (5th Cir. 1990).  The Fifth Circuit held, "[w]e have no doubt that, in not criticizing or counseling Vaughn, self-interest rather than racial hostility motivated Texaco.  Nevertheless, we agree with the magistrate that Texaco ignored its own procedures for a racial reason, however benign that reason may initially appear to be."  *Id.*  Acknowledging that it could never be known whether the employer's honest

criticism of the plaintiff may have saved her job, the Fifth Circuit determined that it would "not sterilize a seemingly objective decision to fire an employee when earlier discriminatory decisions have infected it." *Id.*

Given its decision in *Haynes*, I find it unlikely that the Tenth Circuit would determine that the lack of a PIP, without more, would rise to the level of adverse employment action. But because the present case involves Plaintiff's termination in addition to the lack of written feedback, I believe that it may in this context. At trial, the jury should consider whether the absence of written feedback in the form of a PIP constituted an adverse action. *See Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000) ("Once there has been 'a full trial on the merits, the sequential analytical model adopted from *McDonnell Douglas* ... drops out and we are left with the single overarching issue whether plaintiff adduced sufficient evidence to warrant a jury's determination that adverse employment action was taken against' the plaintiff because of his or her protected status." (quoting *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991)); *see also, e.g., Lentz v. City of Cleveland*, 333 F. App'x. 42, 57 (6th Cir. 2009) (Clay, C.J., dissenting) ("[W]here the law does not clearly indicate whether the undisputed facts concerning an employer's conduct render the conduct an adverse employment action, a judge must allow the jury to decide whether an adverse employment action has occurred.").

In summary, in the absence of any precedent from the Tenth Circuit, and because I find the Fifth Circuit's reasoning in *Vaughn* compelling, I cannot find that the Defendants' failure to provide written feedback in this case cannot qualify as adverse employment action as a matter of law. Accordingly, Defendants' motion for summary judgment on Plaintiff's disparate treatment claim arising from the lack of such feedback will be denied.

Similarly, Plaintiff's motion for summary judgment on these same claims will also be denied due to factual disputes. Plaintiff assumes that had Defendants issued a PIP or other written warning, he would have avoided termination. Certainly, there is evidence from which a jury could decide in his favor. For instance, Plaintiff has come forward with evidence that his performance improved from the time he began working in Albuquerque, when he received several "Needs Improvement" ratings, *see Doc. 51* at 13, until just before his termination, when he was rated as meeting, exceeding, or even far exceeding expectations, *see Doc. 48* at 8, ¶¶ 35-39. Thus, a jury could conclude that Plaintiff was capable of responding to criticism with improved performance.

But there is also evidence from which a reasonable jury could conclude that a PIP or other written warning would not have changed the outcome in this case. For example, Plaintiff concedes that he received oral as opposed to written warnings about his performance but that he did not perceive their importance. *See Doc. 48* at 7, ¶¶ 29-30 (stating in part that "Mr. Hunter was not aware that Mr. Skousen's concerns were of such magnitude that they could result in his termination"). It also appears that a similarly situated white employee who had successfully completed a PIP before Defendants made their RIF decisions was also selected for lay off. *See Doc. 51* at 16, ¶ 58. Thus, a jury might decide that even Plaintiff's successful completion of a PIP would not have saved him from termination either.

**B.     Plaintiff's Remaining Disparate Treatment Claims.**

"Once the plaintiff has established a prima facie case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action. If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000)

(quoting *McDonnell Douglas*, 411 U.S. at 802, 804).  The Tenth Circuit has noted that plaintiffs typically prove pretext in one of three ways:  (1) with evidence that the defendant's stated reason for its adverse action was false; (2) with evidence that the defendant acted contrary to written company policy; or (3) with evidence that the defendant acted contrary to an unwritten policy or company practice.  *See id.* at 1230.

Other than asserting that their failure to provide written feedback cannot constitute an actionable adverse action, Defendants do not meaningfully challenge Plaintiff's prima facie case for disparate treatment.  *See Doc. 47* at 15 (asserting "legitimate, non-discriminatory reasons for each situation involving travel, training or interactions of which Hunter complains, including his selection for layoff").  In fact, Plaintiff's termination is an adverse employment action as a matter of law.  *See EEOC v. C.R. England, Inc.*, 2011 WL 1651372 at *7 (recognizing that termination undeniably constitutes a significant change in employment status).  Defendants maintain that their decision to terminate Plaintiff's employment was solely for legitimate non-discriminatory reasons.  *See Doc. 51* at 8-9.

Defendants' failure to train Plaintiff on the SP2 and Phoenix Handler is sufficiently adverse in this case to satisfy Plaintiff's prima facie burden.  The Tenth Circuit has held that "[o]ne factor that strongly indicates a challenged action is an 'adverse employment action' is that the action causes 'harm to future employment prospects.'"  *Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004).  Plaintiff has submitted evidence that other non-African-American employees with less seniority than Plaintiff were trained on the SP2, and these other employees were not selected for termination.  And Plaintiff, whose termination Defendants attribute to inferior "technical capabilities," views his failure to receive SP2 training as adverse employment

action.  *See Doc. 48* at 4-6.  The Court agrees that Plaintiff has met his prima facie burden in this regard.  Defendants acknowledge there were at least a "few missed training opportunities," and contend these were due only to "legitimate business reasons."  *See Doc. 51* at 3, ¶ 4 & 21 ("Skousen testified in a non-contradictory way as to the several legitimate business reasons why what was simply a training goal did not occur, not the least of which was that Hunter was laid off early in the identified time span for that training").

The material facts as to Defendants' non-discriminatory explanations and Plaintiff's allegations of pretext are hotly disputed and therefore cannot be resolved at the summary judgment stage.  For instance, Defendants' reasons for not scheduling Plaintiff's SP2 training are not entirely clear.  Defendants allege that although Defendant Skousen prepared training schedules for his employees, including Plaintiff, "multiple staffing, timing, customer needs and cost factors outside of Skousen's control affected whether or not, or when, training occurred as proposed."  *Doc. 51* at 3, ¶ 4.  These outside factors and the manner in which they affected Plaintiff are not identified either in Defendants' briefing or in the cited portions of the deposition transcript.  *See Doc. 51* at 12, ¶ 41 (citing Skousen's deposition testimony and indicating, incorrectly, that Skousen "explained why that [training] did not occur").  It is clear, however, that at least some of Skousen's employees received training on both the SP2 and the Phoenix Handler ahead of Plaintiff.  *See Doc. 48-3* at 92 (Skousen testifying that Alex Ball and Rick Meyer attended the SP2 training while Plaintiff was still employed) & 97-98 (Skousen testifying that "a couple of individuals" attended the Phoenix Handler training prior to Plaintiff's termination).  Thus, a trial is required so that a jury may determine whether Plaintiff was subjected to racial discrimination.

### C. Plaintiff's Retaliation Claims

"Federal courts 'lack jurisdiction to review Title VII claims that are not part of a timely-filed EEOC charge.'" *McDonald-Cuba v. Santa Fe Protective. Services., Inc.*, 644 F.3d 1096 (10th Cir. 2011) (quoting *Arnett v. University of Kansas*, 371 F.3d 1233, 1238 (10th Cir. 2004)). In the present case, Plaintiff filed an EEOC charge on or about April 5, 2009, asserting discrimination based on race. *See Doc. 53-1*. He did not check the box provided to indicate that he had been subjected to retaliation nor did Plaintiff otherwise refer to retaliation in his charge. *Id*. Instead, Plaintiff affirmatively stated in his EEOC charge as follows:

> I have been employed as a Customer Service Engineer III for 8 years. I was the only Black employee. Offensive comments were made about slavery by a White manager. My wages were lower than my White co-workers. I was excluded from training and I was not given foreign travel assignments even though I was more qualified and I had more seniority than Whites, who were given these assignments. On 11/18/08, I was terminated even though my performance was outstanding and I received many accolades. I was not allowed to access my internet account after I was terminated. Other Whites were allowed access to their internet accounts after they were terminated.

*Id.* This notice is clearly insufficient to alert the agency to investigate a retaliation claim and cannot support a finding that Plaintiff exhausted his administrative remedies as to such a claim.

Plaintiff has submitted as an exhibit a purported EEOC "Complaint of Discrimination" which refers to discrimination "in reprisal for reporting discrimination." *Doc. 49-10*. He relies on that language as evidence that Plaintiff did indeed exhaust his remedies as to the retaliation claim. *See Doc. 49* at 23. But even if that fleeting reference could be construed as sufficient, I agree with Defendants that Plaintiff has failed to meet his burden with *admissible* evidence as required by Fed. R. Civ. P. 56(c)(2). "[T]he referenced document is not the Charge of Discrimination that

was processed by the administrative agency and the 'complaint' that is attached is unsigned by him and unverified by him, unlike his Charge which is signed and verified under penalty of perjury, as well as dated by him and by a filing date stamp from the EEOC." *Doc. 53* at 8-9. Dismissal of Plaintiff's retaliation claim pursuant to the New Mexico Human Rights Act is similarly required.  *See Sonntag v. Shaw*, 2001-NMSC-015, ¶¶ 12-13, 130 N.M. 238, 243, 22 P.3d 1188, 1193.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment *(Doc. 48)* is **denied**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment *(Doc. 47)* is **granted in part and denied in part**.  Plaintiff's claims of disparate treatment based on race in violation of Title VII and 42 U.S.C. § 1981 will proceed to trial.  Because the Court lacks subject matter jurisdiction over Plaintiff's claims for retaliation in violation of Title VII and the New Mexico Human Rights Act, these claims (Counts II and V) are hereby dismissed with prejudice.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent